The Honorable Rick Green State Representative 1807 Bunker Hill Drive Van Buren, AR 72956-2836
Dear Representative Green:
I am writing in response to your request for an opinion on the following:
 I am requesting an Attorney General's Opinion regarding the practice of the Municipal League and Association of Counties funding lobbyists to represent their associations with tax payer dollars. I am being told that both Associations pay their administrative costs, which would include lobbyists, out of funds derived from tax paid dollars.
 I am under the impression that this may be in violation of either state or federal law or both.
RESPONSE
In my opinion, with respect to your question concerning state law, the Arkansas Municipal League ("AML") and the Association of Arkansas Counties ("AAC") may engage in lobbying activities as long as both entities comply with the applicable State oversight and disclosure laws. I have not uncovered any prohibitions on either entity expending funds on lobbying activities. With respect to federal law, I recommend that you contact the U.S. Attorney's Office for the Eastern District of Arkansas with any particular concerns.
I take your question to be whether the AAC and AML may expend money on lobbying efforts in light of the fact that both organizations receive funding that *Page 2 
originated as tax revenue to a governmental unit. It is my understanding that both the AML and the AAC receive payment from constituent members as service fees pursuant to a contract for administering certain trust funds and risk management pools as well as an annual membership fees. I assume, as you do in your request, that the AML and AAC are properly in receipt of these funds. The question, then, is whether there is any prohibition on the AML, a voluntary association, or the AAC, a private non-profit corporation, from expending moneys received from political subdivisions on lobbying activities.
With respect to state law, lobbying is controlled by the Disclosure Act for Lobbyists and State and Local Officials ("Disclosure Act"), A.C.A. § 21-8-401 through-804 (Repl. 2004 Supp. 2005). The Disclosure Act specifically contemplates the expenditure of public funds for lobbying activities by public officials. See Op. Att'y Gen. 2004-190. While the Disclosure Act regulates the disclosure of lobbying expenditures and the receipt of gifts by public officials, it does not include any blanket prohibitions on who may or may not undertake lobbying activity.
Lobbying is defined as "communicating directly or soliciting others to communicate with any public servant with the purpose of influencing legislative action or administrative action." A.C.A. § 21-8-402(10) (Repl. 2004); see also Ark. Ethics Comm'n Rules § 500(j). The definition of lobbyist is, in pertinent part:
 (a) For purposes of these rules, persons engaged in lobbying activity as defined by § 500(j) will be considered lobbyists, subject to registration and reporting, if the person:
 (1) receives income or reimbursement in a combined amount of $400 or more in a calendar quarter for lobbying activities; or
 (2) expends $400 or more in a calendar quarter for lobbying activities, excluding the cost of personal travel, lodging, meals, or dues; or
 (3) expends $400 or more in a calendar quarter, including postage, for the express purpose of soliciting others to communicate with any public servant to *Page 3 
influence any legislative action or administrative action of one (1) or more governmental bodies unless the communication has been filed with the Secretary of State or has been published in the news media. If the communication is filed with the Secretary of State, the filing shall include the approximate number of recipients.
 (b) All persons who act as lobbyists shall register as lobbyists pursuant to § 502 of these rules unless specifically exempted from registration pursuant to § 504 herein.
 (c) Whether a person is a lobbyist is a factual determination made by the Arkansas Ethics Commission.
Id. at § 501. The only reference to the source of funds paying for lobbying activities is found in § 504 of the Ethics Commission Rules addressing the exemptions to filing as a lobbyist. In pertinent part, § 504 states:
 (a) A lobbyist is not required to register if he or she engages in no lobbying other than the following activities:
 * * * (3)Acting in his or her official capacity as a public servant unless he or she:
 (A) receives income from a non-governmental person over $400 in a quarter for lobbying; or
 (B) expends or is reimbursed over $400 in a quarter, regardless of the source, for lobbying, excluding the cost of informational material and personal travel, lodging, meals, and dues[.]
Id. *Page 4 
The Disclosure Act does not contain any prohibitions on the source of funds expended for lobbying activities. As noted above, the Disclosure Act specifically contemplates public funds being expended by public officials on lobbying activities. See A.C.A. § 21-8-602(a)(2)(C)(ii);and Ark. Ethics Comm'n Rules § 504(a)(3); see also Op. Att'y Gen.2004-190 (opining that employees of the Department of Health may engage in lobbying activities pursuant to the reporting and registration requirements of the Disclosure Act). I have not found a prohibition in the Disclosure Act, or any other relevant state statute, that would prevent the AML or the AAC from expending funds they have properly received for lobbying activities.
With respect to potential constitutional prohibitions, in my opinion there are no applicable constitutional prohibitions on the AML or AAC expending funds to engage in lobbying activity. It is my understanding that both the AML and the AAC are recognized by the Internal Revenue Service as instrumentalities of governmental units for tax purposes under 26 U.S.C. § 115. If the AML and AAC are classified as instrumentalities of government, lobbying activity undertaken by them may be analyzed as "government speech."
One of my predecessors discussed the contours of government speech with respect to whether a municipal advertising and promotion commission could pay fees to an organization involved in lobbying activity. Op. Att'y Gen. 2001-031. In pertinent part, he stated:
 Specifically with respect to the issue of lobbying, I assume your concern is that the city might be restricted from engaging in what the courts generally refer to as "government speech" — i.e., speech that clearly advocates a particular position on a matter of public debate. My immediate predecessor and I have previously addressed this issue in the enclosed Ark. Ops. Att'y Gen. Nos. 98-204 and 2000-162. As reflected in these opinions, the propriety of government speech normally becomes an issue in the context of election campaigns, in which the government is largely precluded from espousing partisan positions. However, the Supreme Court has recognized that government will necessarily commit itself to certain positions in the course of fulfilling its functions. As one commentator has noted: "Unless government is taking a position with respect to religion, where the special strictures of the *Page 5 
establishment clause come into play, courts consider government communication to be a function of the state that is not contained by the limitation of the first amendment." F. Schauer, Is Government Speech a Problem?, 35 Stan. Law Rev. 373, 376 (1983). The Supreme Court has analyzed this issue as follows:
 Government officials are expected as a part of the democratic process to represent and to espouse the views of a majority of their constituents. With countless advocates outside of the government seeking to influence its policy, it would be ironic if those charged with making governmental decisions were not free to speak themselves in the process.
 Keller v. State Bar of California, 496 U.S. 1, 12
(1990). The Court has recently stressed that government speech is most often a matter of merely political, as opposed to constitutional, concern:
 When the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position.
 Board of Regents of University of Wisconsin System v. Southworth, 529 U.S. 217, 234 (2000).
 I recognize that there is a certain tension between, on the one hand, the notion that government must adopt and promote positions in order to function and, on the other, the idea that it must avoid being tendentious in addressing ballot initiatives and referenda. Without presuming to resolve this tension, I will simply note that the Supreme Court has been particularly jealous in guarding the public's right to disinterested government information on matters scheduled for an impending public vote, see enclosed Ark. Ops. Att'y Gen. Nos. 98-204 and 2000-162, while at the same time recognizing that a government by definition must pursue an agenda that will inevitably *Page 6 
carry some political charge. The Court has made clear that it will not brook any governmental use of taxpayer funds to present the public with "information" that amounts to no more than arguments supporting only one side of a ballot initiative or referendum. However, this is not to say that the government must be neutral on issues of public concern. It is in the very nature of a political administration to take and advance positions, and doing so will necessarily entail attempting to influence legislation.
Id. at 4-5. I agree with my predecessor that to a certain extent any political or public organization will "take and advance positions, and doing so will necessarily entail attempting to influence legislation."Id. There is no constitutional proscription, in my opinion, on lobbying activities of the AML or AAC to the extent that the lobbying activities may be considered government speech. In my opinion, the AML and AAC may conduct lobbying activities in compliance with the Disclosure Act and the State Ethics Commission Rules.
With respect to your reference to federal law in your request, I am uncertain to what federal law to which you refer. I am unable to evaluate the entirety of federal jurisprudence and therefore recommend contacting the U.S. Attorney's Office for specific concerns regarding the application of federal law.
Generally speaking, the federal regulation of lobbying is limited to actions directed towards federal officials. Specifically, "lobbying contact" is defined as "any oral or written communication. . . to a[n]. . . executive branch official or a . . . legislative branch official. . . with regard to the formulation, modification, or adoption" of federal legislation, rules, regulation, policies, programs, executive orders or the administration of a federal program.2 U.S.C. § 1602(8)(A). Thus, the federal lobbying disclosure and reporting requirements are only implicated if lobbying activity is directed towards federal officials. Additional questions regarding the interpretation or research of federal law should be directed to the United States Attorney's Office for the Western District of Arkansas at 414 Parker Street, Fort Smith, AR 72901, or at (479) 783-5125.
Certain tax-exempt organizations are prohibited from engaging in partisan political speech. This restriction is most prominently applicable to organizations that are tax exempt under the provisions of26 U.S.C. § 501(c)(3). See I.R.S. Publication 557, Tax-Exempt Status forYour Organization, 45 ("In general, if a *Page 7 
substantial part of the activities of your organization consists of carrying on propaganda or otherwise attempting to influencelegislation, your organization's exemption from federal income tax [under 26 U.S.C. § 501(c)(3)] will be denied.") (emphasis in original);see also Regan v. Taxation with Representation of Wash., 461 U.S. 540
(1983). As noted above, it is my understanding that both the AML and AAC are recognized by the I.R.S. as falling under the provisions of26 U.S.C. § 115, as instrumentalities of a government, and not26 U.S.C. § 501(c)(3). If you have further concerns regarding whether the lobbying activity of the AML or AAC would jeopardize the tax-exempt status of either organization, I recommend that you contact the Internal Revenue Service Tax Exempt/Governmental Entity Cincinnati call site at 1-877-829-5500.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL Attorney General